## A99A1514. BRAND v. UNIVERSITY HOSPITAL.
### (525 SE2d 374)

ANDREWS, Presiding Judge.

Christine Brand appeals from the trial court's grant of University Hospital's motion for summary judgment on her false imprisonment claim. Because we find Brand submitted sufficient evidence to create a jury issue on this claim, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant. *Rice v. Huff*, 221 Ga. App. 592 (472 SE2d 140) (1996).

Brand claims that she was admitted to the Behavioral Health Unit of University Hospital around 2:30 a.m. on Thursday, October 28, 1993, and was not released until about 5:30 p.m. on Friday, October 29, 1993. She argues that even though she demanded to be released, the doctors and nurses would not allow her to leave.

Viewing the evidence in the light most favorable to Brand as nonmovant, the record shows that this case arose on October 27, 1993, when Brand, who was out of town on a business trip, pulled into a gas station because she was not feeling well. Before she could stop the car she suffered a seizure and blacked out. She was taken to the hospital in Thomasville where the doctor gave her the option of staying the night and seeing the neurologist the next day or going home to see her own doctor.[1]

Mary Buchanan, a co-worker, testified that after Brand's accident, two other employees went to get her at the hospital in Thomasville because Brand could not drive. They got back to Augusta with Brand around 2:00 a.m. on Thursday, October 28, and met Mary Buchanan who had told them she would take Brand to the hospital. Buchanan said she took Brand to the Behavioral Unit of the hospital

---

[1] She had just started taking Prozac, and she and her doctor surmised that this could have caused the seizure.

instead of to the emergency room because she assumed Brand had a drug problem. Buchanan said she was an ex-drug addict herself and she recognized the symptoms. Buchanan did not tell Brand she was taking her to the Behavioral Unit — just that she was taking her to the hospital. Buchanan testified that Brand was shaking and trembling to the extent she was almost convulsing and also was disoriented. But, Brand admitted that she signed the consent to treatment form and the "Patient Rights" form when she was admitted.

A nurse did a psychiatric nursing assessment just after Brand was admitted, and this showed no problems beyond "anxiety" and "ineffective coping." Nevertheless, Brand was put on a suicide watch, and the doctor who saw her on Thursday morning recommended she be admitted for further evaluation. His diagnosis was that she was suffering from a panic attack with at least mild depression.

Brand testified that when she awakened Thursday morning and realized where she was, she began requesting a transfer to the main hospital, and the medical records bear this out. The doctor who saw her on the morning of October 28 noted that she called him several times that day and "asked to go home." The doctor said he told her to wait until he could see her. The nurses' notes for October 29 state that Brand was concerned about being in the psychiatric unit and wanted to have her seizures checked out and said she did not need to be in a psychiatric unit for that. The nurse noted that Brand talked to the doctor about being admitted to the main hospital but the doctor said he preferred to keep her in the psychiatric unit.

Brand said that on Thursday she was still trying to be "polite" while requesting a transfer. She said the doctor told her he would return later that day and release her. He did not. When asked if she had ever tried to just walk out, Brand replied that she had, but all the doors were locked. Brand stated that she was locked in the entire time she was on the ward; however, University Hospital points out that Brand left the Behavioral Unit for additional diagnostic procedures such as a chest x-ray and a CT head scan.

Brand's mother said that when she went to take Brand home on the night of October 28, the nurse would not allow her to do so, saying the doctor must release her. Mrs. Brand asked for the doctor's name, but the nurse would not give it to her, and when she asked the nurse to call the doctor, the nurse refused.

Brand's father was also at the hospital on the evening of October 28 and testified that the nurses said they could not release Brand without the doctor's permission and they would not call the doctor.

Mrs. Brand said she and her husband went home and the next day Christine called her crying and asked her to come get her. She said she went to the hospital and waited, but Christine did not come out. She said she could see Christine standing on the other side of the

locked glass doors, but the nurses would not open them. After Christine began crying and violently shaking the doors and yelling for the nurses to let her out, one of the nurses finally "buzzed" the door open.

After leaving the hospital, Brand called her own doctor who had her admitted to the diabetic ward of another hospital for treatment of her physical symptoms. Her treating physician stated that Brand suffered from sleep deprivation and anxiety attacks but was otherwise emotionally and mentally stable and had no physical problems other than her tremors.

Brand then filed suit against University Hospital claiming she was falsely imprisoned. The trial court granted University Hospital's motion for summary judgment on Brand's claim, finding "that there is no evidence that University Hospital acted intentionally to cause Plaintiff's confinement or detention."

"False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." OCGA § 51-7-20. University Hospital contends that Brand was never involuntarily detained, but rather that she voluntarily entered the Behavioral Unit and agreed to stay there for the period during which she was hospitalized and, when she decided to leave, was discharged at her request. The hospital did not dispute that Brand wanted to leave, but rather argues that after "consultation with physicians and University Hospital staff, voluntarily chose to remain in the Behavioral Health Unit." Therefore, the hospital does not claim that it followed the statutory procedure outlined in OCGA § 37-3-22 which provides for the discharge of a voluntary patient.

As the trial court correctly noted, the tort of false imprisonment is an intentional tort. *Stewart v. Williams*, 243 Ga. 580, 581 (255 SE2d 699) (1979). But, the trial court erred when it found that there was no evidence that University Hospital acted intentionally to cause Brand's confinement.

First, there was evidence that Brand never voluntarily admitted herself to the Behavioral Health Unit. Even though Brand admits signing the consent to treatment form, she states, and this evidence is undisputed, that she had a seizure, was in a traffic accident, was trembling so hard she could barely walk, had not slept in over 26 hours, and thought she was being admitted to the emergency room when she arrived at the hospital. See *Heath v. Emory Univ. Hosp.*, 208 Ga. App. 629, 631 (431 SE2d 427) (1993).

Even assuming Brand voluntarily admitted herself to the Behavioral Health Unit, there was evidence that she was held there after demanding to be released. As soon as Brand awakened the next morning and realized where she was, she began questioning why she was in the Behavioral Health Unit. She asked to be admitted to the

regular hospital, but the doctor put her off, told her he would come back later that day, but never did.

Brand's parents both stated that they came to get her the evening of October 28 but the nurses would not release her, would not call the doctor, and refused to give them the name of the doctor who could order her release. Further, Brand states that the next day, even after the doctor told the nurses she could be released to her parents, they still would not allow her to leave until after she screamed and yelled and banged on the locked door.

Therefore, Brand has submitted sufficient evidence to create a jury issue as to whether University Hospital intentionally caused her confinement or whether she voluntarily submitted to her detention in the Behavioral Health Unit. Accordingly, the trial court erred in granting University Hospital's motion for summary judgment.

*Judgment reversed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 16, 1999.

*John P. Batson*, for appellant.
*Kilpatrick Stockton, Joseph H. Huff, Raymond G. Chadwick, Jr.,* for appellee.